NO. 07-04-0469-CR


 NO. 07-04-0470-CR

 NO. 07-04-0471-CR

 NO. 07-04-0472-CR


IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL D



SEPTEMBER 8, 2005


______________________________



STEVEN EDWARD BEDFORD, 



 Appellant


v.



THE STATE OF TEXAS, 



 Appellee

_________________________________



FROM THE 108TH DISTRICT COURT OF POTTER COUNTY;



NOS. 48,667-E, 48,668-E, 48,669-E and 48,670-E;


HON. ABE LOPEZ, PRESIDING


_______________________________



Memorandum Opinion


_______________________________



Before QUINN, C.J., and REAVIS and CAMPBELL, JJ.

 Appellant Steven Edward Bedford appeals from his convictions for aggravated
assault with a deadly weapon. The convictions were based on his guilty pleas, which pleas
were entered after the trial court refused to grant him leave to voir dire the jury venire about
"mental health issues and jurors' experience" with same. Counsel for the defense told the
trial court that she "would like to know if jurors have any experience in their life dealing with
people who suffer from depression or suicide attempts." The two issues now before us
concern the trial court's decision and trial counsel's effectiveness. That is, appellant
contends that the court abused its discretion when it refused to allow the voir dire and that
his counsel was ineffective because she failed to preserve the matter for appellate review. 
We affirm the judgments.

 Issue One - Leave to Voir Dire

 Though appellant informed the judge of the particular topic he sought to develop, no
record was made of the specific questions he proposed to ask. That is needed to preserve
any complaint one may have about a trial court's restriction of voir dire. See Caldwell v.
State, 818 S.W.2d 790, 793-94 (Tex. Crim. App. 1991), overruled on other grounds by
Castillo v. State, 913 S.W.2d 529 (Tex. Crim. App. 1995) (holding that one preserves his
complaint about being unable to ask questions during voir dire by presenting the specific
question to the trial court and obtaining an adverse ruling); Dhillon v. State, 138 S.W.3d
583, 589 (Tex. App.- Houston [14th Dist.] 2004, pet. dism'd) (stating that a question that is
vague or broad is not proper and fails to preserve error); Aquino v. State, 710 S.W.2d 747,
752 (Tex. App.-Houston [14th Dist.] 1986, pet. ref'd) (holding that error was waived since
the defendant failed to make a bill of exceptions as to the questions he wished to pose to
the prospective juror). Given that the record lacks the specific questions appellant sought
to ask, issue one is waived.

 Issue Two - Effective Assistance

 We next address appellant's claim that his trial attorney rendered ineffective
assistance. Though the gist of the issue tends to involve the failure to preserve complaint
about the restriction of voir dire, he also talks about the trial court's purported decision to
exclude the evidence of appellant's alleged mental problems. We, therefore, will address
both topics.

 The applicable standard of review is well-settled and discussed in such cases as 
Ex parte Nailor, 149 S.W.3d 125 (Tex. Crim. App. 2004) and Bone v. State, 77 S.W.3d 828
(Tex. Crim. App. 2002). Those cases inform us that one raising the claim must establish
both that his counsel was deficient and that the deficiency was prejudicial. Bone v. State,
77 S.W.3d at 833. Furthermore, it is clear that the claim must be firmly founded in the
record. Ex parte Nailor, 149 S.W.3d at 130.

 In applying the aforementioned standard to the question of whether appellant failed
to preserve error viz the decision to exclude evidence, we note that the trial court did not
rule that the evidence would be excluded. It simply granted the State's motion in limine,
and in that motion, the State merely sought an order requiring the parties to approach the
bench before evidence of mental illness was proffered. The trial court's decision fell far
short of one holding that the evidence was inadmissible. So, because the evidence had
not been ruled inadmissible, trial counsel cannot be held ineffective for failing to preserve
complaint about something that never happened.

 As to the matter of voir dire, we are again informed of no specific questions that 
appellant sought to ask the jury. This is fatal given the nature of the complaint. While
certain topics may be fair game in voir dire, the manner in which they are broached may
nonetheless be objectionable. See e.g., Barajas v. State, 93 S.W.3d 36, 38-39 (Tex. Crim.
App. 2002) (noting that while the potential for bias is a legitimate subject for voir dire, a
litigant cannot inquire into that potentiality through questions seeking commitments for the
venire members). So, without a hint from appellant about what specific questions, if any,
an effective attorney could and should have asked, we cannot analyze whether trial counsel
actually erred. So, we overrule this issue as well.

 Having overruled each issue, we affirm the judgments of the trial court.


 Brian Quinn 

 Chief Justice


Do not publish. 



ont-family: 'Arial', sans-serif">FROM THE CRIMINAL DISTRICT COURT NO. 3 OF TARRANT COUNTY;

NO. 1027513D; HONORABLE ELIZABETH BERRY, JUDGE
_______________________________


Before CAMPBELL and HANCOCK and PIRTLE, JJ.
MEMORANDUM OPINION
          Appellant, Gary Rafeal Allen, appeals his conviction for the offense of possession
of a controlled substance, cocaine, of four grams or more but less than 200 grams with
intent to deliver,


 enhanced by one prior felony conviction.


 Appellant was sentenced to
20 years incarceration in the Institutional Division of the Texas Department of Criminal
Justice. We affirm. 
Factual and Procedural Background
          On February 10, 2006, Officer Chavez of the Arlington Police Department was
transporting a prisoner to jail when he passed a car in the driveway to a bar parking lot. 
From Chavez’s perspective, a male, later identified as appellant, and a female, later
identified at Carolyn Hill, were having an altercation and the male appeared to be trying to
either keep the female from leaving or pulling her into the car. Chavez felt that the
situation might be a domestic assault in progress. Chavez turned his patrol car around and
pulled into the parking lot to investigate. 
          As Chavez approached the vehicle in the parking lot, he observed appellant
reaching through the passenger window. Chavez ordered appellant to step away from the
car. Appellant complied and raised his hands to show that he did not have a weapon. 
Chavez asked appellant and Hill for some identification and, while the identification was
being produced, both appellant and Hill advised that there was nothing wrong and that the
two of them had just been having an argument. After obtaining identification from appellant
and Hill, Chavez returned to his vehicle to check for outstanding warrants. 
          As Chavez was checking for warrants in his vehicle, Officer Worman arrived on the
scene. Worman testified that it is standard procedure to send a backup unit to any
suspected assaultive type police call. Worman was briefed by Chavez about what was
transpiring. Worman then started approaching appellant and Hill, who were both seated
in their vehicle, when he noticed appellant take a baggy out of the cargo pocket of his
shorts and hide it behind the seat. Worman immediately ordered appellant from the
vehicle and asked Officer Rhodes, who had also just arrived on the scene, to take custody
of appellant while Worman retrieved the baggy from behind the driver’s seat. After
retrieving the baggy, Worman began talking to Hill when appellant made a statement
claiming that the cocaine was his and that Hill had nothing to do with it.
          Appellant was placed under arrest and, while being searched incident to the arrest,
a baggy of marijuana was found in one of his pockets. Additionally, $1,653 in cash was
found on appellant. 
          Before trial, appellant filed a motion to suppress the evidence seized at the scene. 
The trial court conducted a hearing on the motion to suppress and denied the same. Later,
the trial court filed findings of fact and conclusions of law regarding the seizure. After the
close of the evidentiary portion of the guilt or innocence phase of the trial, appellant
requested the trial court give a charge to the jury pursuant to article 38.23 of the Texas
Code of Criminal Procedure, which the trial court denied.


 The jury found appellant guilty
of possession of a controlled substance, cocaine, of four grams or more but less than 200
grams with the intent to deliver. The same jury subsequently sentenced appellant to 20
years incarceration in the Institutional Division of the Texas Department of Criminal Justice.
          Through three issues, appellant contends that: 1) the trial court abused its discretion
in overruling the motion to suppress the evidence seized, 2) the trial court abused its
discretion in denying appellant’s requested jury instruction pursuant to article 38.23 of the
Texas Code of Criminal Procedure, and 3) the evidence was legally and factually
insufficient to prove possession of cocaine with intent to deliver.


 We disagree with
appellant’s contentions and will affirm the trial court’s judgment.
Motion to Suppress
          Appellant’s first issue contends that the trial court abused its discretion by overruling
his motion to suppress. Through a pre-trial motion to suppress, appellant contends that
the cocaine was seized in violation of his rights under the 4th amendment to the United
States Constitution and Article I, Section 9, of the Texas Constitution. See U.S. Const.
amend. IV; Tex. Const. art. I, § 9. According to appellant, because the cocaine was
seized in violation of his constitutional rights, the trial court abused its discretion by
overruling his motion to suppress under the provisions of article 38.23. 
Standard of Review
          A trial court’s ruling on a motion to suppress is reviewed for abuse of discretion. 
See Oles v. State, 993 S.W.2d 103, 106 (Tex.Crim.App. 1999). Whether the trial court
abused its discretion depends upon whether, given the record and the law, its decision fell
outside the zone of reasonable disagreement. See Benitez v. State, 5 S.W.3d 915, 918
(Tex.App.–Amarillo 1999, pet. ref’d).
          Our review of the trial court’s ruling on the motion to suppress is conducted as a
bifurcated review. See Amador v. State, 221 S.W.3d 666, 673 (Tex.Crim.App. 2007). The
trial judge is the sole trier of fact and judge of the credibility of the witnesses and the weight
to be given their testimony. See Wiede v. State, 214 S.W.3d 17, 24-25 (Tex.Crim.App.
2007). The reviewing court must, therefore, give almost total deference to the trial court’s
ruling on questions of historical fact and application of law-to-fact questions that turn on an
evaluation of credibility and demeanor. See Amador, 221 S.W.3d at 673. When
application of law-to-fact questions do not turn on the credibility and demeanor of the
witnesses, the reviewing court reviews the trial court’s rulings on a de novo basis. See id.
          In the case at bar, the trial court made findings of fact and conclusions of law
regarding its ruling on appellant’s motion to suppress. These findings and conclusions
provide a basis for our review of the trial court’s application of the law to the facts. See 
Rodriguez v. State, 919 S.W.2d 136, 139 (Tex.App.–San Antonio 1995, no pet.). 
Analysis
          Initially, we observe that the trial court made the following findings of fact and
conclusions of law regarding the motion to suppress:
Findings of Fact

1. On February 10, 2006, Officer J. Chavez of the Arlington Police
Department was traveling down South Cooper Street in Arlington, Tarrant
County, Texas when he saw the Defendant trying to hold onto a black
female. It appeared to Officer Chavez that the Defendant was either trying
to hold onto the female or was trying to get the female into a vehicle.

 
2. Officer Chavez stopped to investigate a possible assault. When Officer
Chavez stopped, the female was seated in the driver’s side of a vehicle and
the Defendant was entering the passenger side of the same vehicle. Officer
Chavez spoke to both the Defendant and the female and obtained their
identification. Officer Chavez returned to his patrol car to run the
identification through his car computer. During this time, the defendant was
seated in the passenger seat of the vehicle and the female was seated in the
driver’s seat of the vehicle.

 
3. While Officer Chavez was running the identification through his in car
computer, Officer B. Worman arrived to assist. Officer Worman approached
the passenger side of the vehicle where the Defendant was seated. As
Officer Worman approached, he heard the Defendant saying Baby, Baby,
Baby and saw the Defendant pull a baggy containing a white powder
substance out of his pocket and attempt to conceal it. Based upon what he
observed, Officer Worman believed the Defendant was concealing a
Controlled Substance. Officer Worman retrieved the baggy and recognized
the contents to be Cocaine based upon his training and experience. The
Defendant was placed under arrest for Possession of a Controlled
Substance with Intent to Deliver.

 

4. After the Defendant was arrested, Officer Worman spoke with the female
regarding the possible assault that Officer Chavez had observed prior to
stopping and the Controlled Substance. While Officer Worman was
speaking with the female or immediately thereafter, the Defendant stated the
Cocaine was his and that the female had nothing to do with it. When the
Defendant made this statement, no police officer was asking him questions. 
No police officer made any statements to the Defendant to elicit the
Defendant’s statement that the Cocaine was his and the female had nothing
to do with it.


The trial court also entered the following conclusions of law, applicable to the seizure of
the cocaine:
1. Based upon his observations, Officer Chavez had reasonable suspicion
to believe that the Defendant had committed or was committing the offense
of assault.

 
2. Based upon his observations, Officer Chavez was entitled to conduct a
temporary detention of the Defendant and the female.

 
3. Officer Chavez acted diligently to confirm or dispel his suspicions in a
reasonable length of time.

 
4. During the lawful, temporary detention, Officer Worman observed in plain
view from a lawful vantage point the Controlled Substances that the
Defendant attempted to conceal.

 
5. The Controlled Substances were not seized in violation of any provision
of the United States Constitution, the Texas Constitution or the Texas Code
of Criminal Procedure.

 
6. The Controlled Substances are admissible as a matter of law and fact.


          Initially, we observe that the findings of fact regarding the actions of Chavez and
Worman are supported by each officer’s testimony. Therefore, the trial court must have
found the officer’s testimony believable. Which is to say, the decision of the trial court
turned in large measure upon the trial court’s determination of credibility based upon
observations of each witnesses’ demeanor. Therefore, the finding is entitled to almost total
deference by this reviewing court. Amador, 221 S.W.3d at 673. We review the actions of
the officers from the standpoint of an objectively reasonable person so situated as was the
police officer to determine if the historical facts, as found by the trial court, could amount
to “reasonable suspicion” sufficient to justify an investigatory detention. Ornelas v. United
States, 517 U.S. 690, 696-99, 116 S.Ct. 1657, 1661-62, 134 L.Ed.2d 911 (1996). 
          The actions of Chavez, as found by the trial court and supported in the record,
reflect that an officer observed what he believed to be an assault in progress. The officer
investigated. Despite being told by the appellant and Hill that there was no problem,
Chavez wanted to make sure so he requested identification. Initially, we must determine
if Chavez had reasonable suspicion to initiate the detention. Using the test as set forth in
Ornelas and applying it to the facts, as found by the trial court, we conclude that Chavez
did, in fact, have reasonable suspicion to justify the initial detention. Id. The trial court
concluded, and the record supports, that Chavez’s action of trying to verify identification
and checking for warrants was reasonable and did not unduly prolong the detention. For
purposes of appellate review, the question is did the police diligently pursue a means of
investigation that would confirm or dispel their suspicions. See Kothe v. State, 152 S.W.3d
54, 64 (Tex.Crim.App. 2004). Our review of the record leads to the conclusion that
Chavez diligently pursued a means to confirm or dispel his suspicions. Therefore, the
detention in question was not so long as to become constitutionally prohibited. Id. 
Inasmuch as the initial detention was legal, the subsequent seizure of the cocaine, located
in plain view, was also legal. See Walter v. State, 28 S.W.3d 538, 541 (Tex.Crim.App.
2000) (finding that the plain view doctrine requires only that: 1) the officer has a right to be
where he is, 2) the doctrine not be used as a pretext, and 3) it be immediately apparent
that the item seized constitutes evidence). Having found reasonable suspicion for Chavez
to initially have detained appellant, Worman had a right to be where he was and he
immediately recognized the baggy as containing contraband. Accordingly, the trial court
did not abuse its discretion in overruling appellant’s motion to suppress the evidence. See
Oles, 993 S.W.2d at 106. Appellant’s first issue is overruled.
 
 
 
Article 38.23 Jury Charge Error
Standard of Review
          Appellant next contends that the trial court committed reversible error when it
refused appellant’s request for an instruction to the jury pursuant to article 38.23. See art.
38.23. When reviewing alleged charge error, a reviewing court conducts what is essentially
a two-part inquiry. First, we determine whether error exits. Druery v. State, 225 S.W.3d
491, 504 (Tex.Crim.App. 2007) (citing Almanza v. State, 686 S.W.2d 157, 171-72
(Tex.Crim.App. 1985)). If error exists, then we review to determine whether the error
caused sufficient harm to require reversal. Id. The degree of harm required to cause
reversal depends upon whether the error was preserved. Id. Error properly preserved will
require reversal as long as the error is not harmless. Id. See Almanza, 686 S.W.2d at
171. This requirement has been held to mean that any harm, regardless of degree, is
sufficient to require reversal. See Arline v. State, 721 S.W.2d 348, 351 (Tex.Crim.App.
1986).
          In order to be entitled to a jury instruction on article 38.23(a), an appellant must
meet three requirements:
(1) The evidence heard by the jury must raise an issue of fact;

 
(2) The evidence on that fact must be affirmatively contested; and

 
(3) That contested factual issue must be material to the lawfulness of the
challenged conduct in obtaining the evidence.

 
Madden v. State, 242 S.W.3d 504, 510-12 (Tex.Crim.App. 2007).
Analysis 
          Appellant contends that the evidence produced at trial raises a fact issue, however,
our review of the evidence does not support appellant’s contention. The crux of appellant’s
argument is that the officers involved gave conflicting testimony at the suppression hearing
and before the jury. This does not raise a contested factual issue for two reasons: 1)
assuming there was some sort of conflict between the versions of the officers’ testimony,
the jury did not hear the testimony at the suppression hearing and, therefore, that could not
create a fact issue and 2) appellant’s argument is truly directed at the legal effect of the
testimony the court heard during both the suppression hearing and the trial on the merits. 
During the trial, appellant never affirmatively contested the facts of the initial detention by
Chavez, rather, he contested the conclusion Chavez drew from what he observed. This
is not an issue for an article 38.23 instruction for it deals with a question of law, specifically
whether or not the factual observations of Chavez amounted to reasonable suspicion that
an assaultive offense was occurring. See Id. at 510-11. Accordingly, the trial court was
correct in denying appellant’s request for a jury instruction pursuant to article 38.23. 
Therefore, appellant’s second issue is overruled.
Legal and Factual Sufficiency
          Appellant next contends that the evidence is legally and factually insufficient to
prove that he possessed the cocaine with the intent to deliver.
 
Standard of Review
          Appellant challenges both legal and factual sufficiency. Therefore, we are required
to conduct an analysis of the legal sufficiency of the evidence first and then, only if we find
the evidence to be legally sufficient, do we analyze the factual sufficiency of the evidence. 
See Clewis v. State, 922 S.W.2d 126, 133 (Tex.Crim.App. 1996).
          In assessing the legal sufficiency of the evidence, we review all the evidence in the
light most favorable to the verdict to determine whether any rational trier of fact could have
found the essential elements of the offense beyond a reasonable doubt. Jackson v.
Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); Ross v. State, 133
S.W.3d 618, 620 (Tex.Crim.App. 2004). In conducting a legal sufficiency review, an
appellate court may not sit as a thirteenth juror, but rather must uphold the jury’s verdict
unless it is irrational or unsupported by more than a mere modicum of evidence. Moreno
v. State, 755 S.W.2d 866, 867 (Tex.Crim.App. 1988). We measure the legal sufficiency
of the evidence against a hypothetically correct jury charge. See Malik v. State, 953
S.W.2d 234, 240 (Tex.Crim.App. 1997).
          When an appellant challenges the factual sufficiency of the evidence supporting his
conviction, the reviewing court must determine whether, considering all the evidence in a
neutral light, the jury was rationally justified in finding the appellant guilty beyond a
reasonable doubt. See Watson v. State, 204 S.W.3d 404, 415 (Tex.Crim.App. 2006). In
performing a factual sufficiency review, we must give deference to the fact finder’s
determinations if supported by evidence and may not order a new trial simply because we
may disagree with the verdict. See id. at 417. As an appellate court, we are not justified
in ordering a new trial unless there is some objective basis in the record demonstrating that
the great weight and preponderance of the evidence contradicts the jury’s verdict. See id. 
Additionally, an appellate opinion addressing factual sufficiency must include a discussion
of the most important evidence that appellant claims undermines the jury’s verdict. Sims
v. State, 99 S.W.3d 600, 603 (Tex.Crim.App. 2003). The Court of Criminal Appeals has
recently declared that, when reviewing the evidence for factual sufficiency, the reviewing
court should measure the evidence in a neutral manner against “a hypothetically correct”
jury charge. Vega v. State, 267 S.W.3d 912, 915 (Tex.Crim.App. 2008) (citing Wooley v.
State, 273 S.W.3d 260, 260-61 (Tex.Crim.App. 2008)).
Legal Sufficiency Analysis
          Appellant’s sole issue regarding the legal sufficiency of the evidence is that the
evidence does not prove that he possessed the cocaine with the intent to deliver. In fact,
appellant admitted possession, but claimed that the possession was for personal use and
to share with his friends. He denied adamantly that the possession had anything to do with
a desire to sell cocaine to his friends. 
          Against appellant’s evidence, the State produced evidence that showed that the
amount of contraband in question was 38 grams in weight, including the plastic baggy. 
The laboratory reported that the weight of the cocaine was 35.64 grams, not including the
baggy. Further, the record reflects that $1,653 was recovered from appellant. The entire
amount of the cocaine seized was packaged in one baggy, as opposed to small individual
dose size packets. At least three officers testified that, based upon their experience and
training, appellant was possessing the cocaine with the intent to deliver. One of the
officers, a narcotics task force member, stated that cocaine packaged for individual use
was normally packaged in 1 gram or 1/10th gram packets. Intent to deliver may be proved
by circumstantial evidence. Rhodes v. State, 913 S.W.2d 242, 251 (Tex.App.–Fort Worth
1995), aff’d, 945 S.W.2d 115 (Tex.Crim.App. 1997). The fact that appellant was arrested
with what several officers termed “a large amount of cocaine” together with how the
cocaine was packaged and that appellant had on his person a large amount of cash are
factors to be considered in determining intent to deliver. See Jordan v. State, 139 S.W.3d
723, 726 (Tex.App.–Fort Worth 2004, no pet.). Additionally, expert testimony may be
introduced to prove intent to deliver. Id. When we review all of the above evidence in the
light most favorable to the jury’s verdict, we cannot say that the jury acted irrationally in
finding that the appellant possessed cocaine with the intent to deliver. Accordingly,
appellant’s issue regarding the legal sufficiency of the evidence is overruled.
Factual Sufficiency Analysis
          This same evidence, even when viewed in a neutral light, still leads to the
conclusion that the jury was acting rationally when it found appellant guilty beyond a
reasonable doubt of possession of cocaine with intent to deliver. Watson, 204 S.W.3d at
415. We are required to discuss the evidence that appellant contends casts doubt on the
jury’s decision. See Sims, 99 S.W.3d at 603. Appellant insists that his testimony about
having the drugs to “share with,” as opposed to “sell to,” friends logically explains why he
had such a large amount of drugs. Further, appellant asserts that he explained where he
got the money the police found on his person. If believed, all of these statements might
defeat the possession with intent to deliver element.


 However, it was up to the jury to
believe or disbelieve the testimony of appellant. Watson, 204 S.W.3d at 417. The jury
observed appellant testifying and was in position to judge his demeanor and credibility and
we are to give appropriate deference to the jury’s determination. Id. When we apply these
principles to the facts before us, we find that the jury’s decision to convict appellant of
possession with intent to deliver was not irrational. Id. at 415. Therefore, we overrule
appellant’s issue regarding the factual sufficiency of the evidence to prove intent to deliver.
Conclusion
          Having overruled all of appellant’s issues, we affirm the judgment of the trial court.
 
                                                                           Mackey K. Hancock

                                                                                     Justice



Do not publish.